Yvonne D. JACKSON, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–92–00275–CR.

Court of Appeals of Texas, Houston (14th Dist.).

June 3, 1993.

Rehearing Denied July 15, 1993.

Janet Seymour Morrow, Houston, for appellant.

Alan Curry, Houston, for appellee.

Before MURPHY, SEARS and DRAUGHN, JJ.

## OPINION

SEARS, Justice.

Appellant was convicted by a jury of possession of cocaine with an affirmative finding on the use of a deadly weapon. Appellant took the stand for the first time during punishment. All parties then discovered that Appellant was receiving disability payments from the State because she was mentally retarded. The trial court allowed the jury to assess punishment, but declined sentencing until a competency hearing was conducted. The jury found a single enhancement paragraph to be true, and assessed punishment at confinement for life in the Texas Department of Criminal Justice—Institutional Division, and a one thousand and eighty-four dollar fine. We reverse and remand.

After a finding of guilty, a second jury was assembled to determine if the Appellant had been competent to stand trial. Three psychologists testified that the Appellant had been incompetent to stand trial and would not regain her competency. A fourth doctor testified that Appellant was mentally retarded, and that *if* the proceedings had been properly explained to her, she could have been competent to stand trial. The jury found that Appellant was competent at the time of trial, and the Court then imposed the life sentence. Appellant brings four points of error.

 In her first point, Appellant maintains that the jury's competency finding is against the great weight and preponderance of the evidence. An accused is competent to stand trial if she has "sufficient present ability to consult with [her] lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against [her]." *Loftin v. State*, 660 S.W.2d 543, 545–546 (Tex.Crim.App.1983). An ac-

cused is presumed competent until she proves her incompetency to stand trial by a *preponderance* of the evidence. *Sallings v. State*, 789 S.W.2d 408, 411 (Tex.App.—Dallas 1990, pet ref'd). The correct standard of review is whether, after considering all of the evidence, the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Meraz v. State*, 785 S.W.2d 146, 155 (Tex.Crim.App.1990). When reversing on an insufficiency point, a court of appeals must detail the evidence relevant to the issue, state why the jury's finding is factually insufficient, and state in what regard the contrary evidence greatly outweighs the evidence supporting the verdict. *Meraz* at 154.

## BACKGROUND

All parties learned for the first time during the punishment phase of the trial that Appellant was receiving disability payments from the State, that she was mentally retarded and that she was seeing a psychiatrist. Her attorney approached the bench to discuss holding a competency hearing. The Court ruled that "we will finish this trial and I will simply delay sentencing. We'll have her evaluated before sentencing." The next day, the State and Appellant's trial attorney filed a joint "Motion For Psychiatric Examination." The motion was granted on November 15, 1991.

Dr. Silverman examined the Appellant on December 12, 1991, pursuant to the November 15th order. He concluded that "Ms. Jackson is incompetent to stand trial at the present time. Since her incompetence ... is based on a mental defect which is not treatable, there is no reason to expect that her competence will be restored in the foreseeable future."

The State was not pleased with Dr. Silverman's report, and filed a second "Motion For Psychiatric Examination." Pursuant to this motion, Dr. Stone examined the Appellant and then requested that Dr. Laval also examine the Appellant. Both Dr. Stone and Dr. Laval independently conclud-

ed that the Appellant was permanently incompetent.

The State, still searching for a "favorable" expert, requested that a fourth psychiatric examination be obtained. This time, however, the State specifically requested that Dr. Quijano, an out of county doctor, perform the evaluation. The State contended that he was "disinterested and qualified." The motion was presented to a visiting judge without advising him of the three prior psychiatric evaluations. An order granting a fourth psychiatric evaluation was signed by the visiting judge on February 11, 1992. Pursuant to that order, Dr. Quijano examined Appellant and found that she "appeared to be incompetent to stand trial," but that her incompetency was correctable.

### EVIDENCE AGAINST THE JURY'S VERDICT

■ Dr. Stone, the medical director of Forensic Psychiatric Services at the Harris County Jail, believed that Ms. Jackson had not been, was not, and would not become competent to stand trial. Likewise, Dr. Silverman, a psychologist at West Houston Psychological Associates, believed that Ms. Jackson was permanently incompetent. He testified that her incompetency was based on a mental defect. He stated that Ms. Jackson's IQ tested at 64, indicating that she was mildly, mentally retarded. He noted that he did not believe that Ms. Jackson was either malingering or lying. Dr. Laval, a licensed psychologist, testified that Ms. Jackson was mentally retarded, and that as a result of her retardation, she was not and would not become competent to stand trial. Dr. Stone, Dr. Silverman and Dr. Laval did not review the trial transcript. Their opinions were based upon their reviews of medical records and their personal interviews with Ms. Jackson.

Dr. Quijano also found that Ms. Jackson was mentally retarded. He testified that she was incompetent due to ignorance. He noted that she does not understand the legal procedure or terminology used in the courtroom. He stated that once these procedures are explained to her, she could

then be competent to stand trial. Dr. Quijano testified, "knowing what I know of her, if the proceedings were not explained to her at a level she could understand then ... there's a good chance ... she may not have understood what was going on." He admitted that no questions were asked of Ms. Jackson during the trial pertaining to her competency or how she related to her attorney. He noted that people can communicate and respond to questions, but still be incompetent to stand trial.

### EVIDENCE SUPPORTING THE JURY'S VERDICT

Based upon his review of the *transcript*, Dr. Quijano believed that Jackson "appeared" to understand the attorneys' questions and did not "appear" incompetent. Joseph Omby, an assistant district attorney for Harris County, testified that he observed approximately one-third of the trial, and all of Ms. Jackson's testimony at punishment. He predictably found her responses and demeanor to be appropriate. He believed that she had understood the factual issues, knew this was a legal proceeding, and knew the attorneys asked questions and the judge made the rulings.

### REVIEW OF THE EVIDENCE

Three experts testified that the Appellant was incompetent and would not become competent. Dr. Quijano seemed to testify both ways, but it is important to note what he stated in his report:

In sum, *the defendant appeared to be incompetent to stand trial* on the basis of lack of understanding of court proceedings, guilt/innocence, punishment and incompetent phases. However, the defect appeared to be correctable by simple instructions. Competency is expected to be restored in the foreseeable future after simply explaining the portions of the court proceedings that she does not understand in a language that she understands. This should be accomplished by the defense lawyer educating his client. If he is not capable of doing so for one reason or another, a court appointed person may do it or the defen-

dant may be sent to the competency restoration program at Vernon State Hospital after the procedure of the incompetency commitment is explained to the defendant. (emphasis added).

In light of all the evidence, we hold that the jury's finding that Appellant had been competent to stand trial is so against the great weight and preponderance of the evidence that it is manifestly unjust. We sustain Appellant's first point of error.

In her second point of error, Appellant contends that the evidence is insufficient to support the deadly weapon finding. A charge was submitted containing a special issue on the use of a deadly weapon. The jury found that Appellant had used or exhibited a deadly weapon in the commission of the offense of possession of cocaine.

■ The use of a deadly weapon extends to any employment of a deadly weapon, including its simple possession, *if* such possession facilitated the associated felony. *Ramirez v. State*, 822 S.W.2d 240, 245 (Tex.App.—Houston [1st Dist.] 1991, pet ref'd). "The weapon must be utilized to achieve an intended result, namely, the commission of a felony." *Narron v. State*, 835 S.W.2d 642, 644 (Tex.Crim.App.1992).

■ In this case, officers of the Houston Police Department executed a search warrant and entered a home at 1705 West street. The Appellant was across the street playing dominos. Inside the house, the police found four children, two rocks of crack cocaine and six guns. There is no evidence that the guns were "used or exhibited;" they were merely found. Further, Appellant was not in the residence when the search warrant was executed, and was not seen in the residence when the officers first visited the house and obtained the information made the basis of the search warrant.

In order to make an affirmative finding on the use or exhibition of a deadly weapon, the deadly weapon must be utilized, employed, applied or at least consciously displayed during the commission of the felony offense. *Patterson v. State*, 769 S.W.2d 938, 940 (Tex.Crim.App.1989). We find that the evidence is insufficient to support a finding that Appellant used, employed or exhibited a deadly weapon during the commission of this felony. We sustain Appellant's second point of error.

■ In her third point of error, Appellant requests this Court to reform the judgment by deleting the affirmative finding on the use of a deadly weapon, because the State failed to file a written pleading notifying the defendant of its intent to seek a deadly weapon finding.

Four days before trial the prosecutor notified the defendant by letter that he would seek an affirmative finding on the use of a deadly weapon. Defense counsel filed a motion on the day of trial objecting to the special issue. He argued to the trial court that "there has to be some form of pleading before such an issue, before such a finding can be placed before the jury.... There has been no type of either re-indictment or a special plea or anything filed by the State." The prosecutor responded that "oral notice of counsel as long as its on the record pretrial is sufficient to raise the issue [of an] affirmative finding." The prosecutor was incorrect.

It is well established that "an affirmative finding of use or exhibition of a deadly weapon must be supported by a written pleading, albeit not necessarily the indictment." *Luken v. State*, 780 S.W.2d 264, 266 (Tex.Crim.App.1989); *McFarland v. State*, 834 S.W.2d 481, 484 (Tex.App.—Corpus Christi 1992, no pet.). Neither the indictment nor any special plea contains an allegation of use or exhibition of a deadly weapon. We find that a letter, delivered to Appellant's trial counsel four days before trial, and not filed with the Court, does not constitute a "written pleading." Appellant's third point is sustained.

■ In her fourth and final point, Appellant contends that her trial counsel rendered ineffective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, Appellant must prove both that her counsel's performance was deficient and that there is a reasonable probability that but for the deficient performance the result would have been dif-

ferent. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex.Crim.App.1990); *Ross v. State*, 800 S.W.2d 262, 266 (Tex.App.— Houston [14th Dist.] 1990, pet. ref'd). Whether this standard is met, is judged by the totality of the representation. *Welborn* at 393.

■ An attorney must have a "firm command of the facts of the case as well as the governing law before he can render reasonably effective assistance of counsel." *Id.* He has a duty to make proper investigations and to prepare for trial, as well as a professional duty to "present all available evidence and arguments to support the defense of his client." *Ex parte Langley*, 833 S.W.2d 141, 143 (Tex.Crim.App.1992); *Ex parte Duffy*, 607 S.W.2d 507, 518 (Tex. Crim.App.1980).

In this case, counsel failed in his duty to Appellant in the following ways:

(1) he knew that Appellant was receiving disability payments from the State, but failed to investigate why;

(2) he knew the Appellant "lacked understanding" about the proceedings, but failed to have her tested, or to ask for a competency hearing;

(3) he knew that Appellant's purse contained over one thousand dollars, but failed to inquire why she had the money (the money was actually proceeds from the disability checks);

(4) he failed to provide or investigate any defenses or mitigating evidence;

(5) he failed to object to the admission of extraneous and inflammatory evidence; and

(6) he called a CPS caseworker as a defense witness in an attempt to prove that Appellant's children "tell stories," but instead only raised questions of child abuse, which further damaged the Appellant in an already high profile case.

If counsel had investigated the case, he would have found that the money in Appellant's purse came from the recent cashing of three disability checks, and that the marked forty dollars, which the State used as proof of the sale of cocaine, possibly came from the woman next door. Most importantly, he would have discovered that the disability checks were for mental retardation, and then could have requested a *pre-trial* competency hearing. Finally, Appellant's attorney allowed extraneous evidence of delivery of narcotics and possession of weapons to be admitted without objection. We find that the deficiencies in the trial representation did prejudice Appellant's defense and did affect the outcome of the trial. We sustain Appellant's fourth point of error, reverse the judgment of the trial court, and remand the cause for a new competency hearing and a new trial.

The judgment of the trial court is reversed and remanded.

DRAUGHN, J., concurs in the result only.