NO. 07-01-0147-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



AUGUST 20, 2002


______________________________



TRUMAN TOMMY MATTHEWS
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 155TH DISTRICT COURT OF WALLER COUNTY;



NO. 98-05-9372; HON. DAN R. BECK, PRESIDING


_______________________________



Before BOYD, C.J., QUINN and REAVIS, JJ.

 Truman Tommy Matthews (appellant) appeals his conviction for murder. Via five
issues, appellant contends that the trial court erred by 1) failing to find appellant
incompetent to stand trial due to physical illness, 2) excusing a juror who was already
sworn and "engaged in the trial," 3) admitting evidence of a prior conviction during the
State's case-in-chief, 4) admitting hearsay testimony and 5) instructing the jury on
"provoking the difficulty." We affirm.


Background


 Appellant was charged with murdering his 37 year old step-son. He allegedly killed
the man in self-defense after the step-son began hitting him with a frying pan. A jury found
appellant guilty of the offense and sentenced him to life in prison. 

Issue One- Competency to Stand Trial


 Appellant initially contends that the trial court denied him due process when it
refused to hold him incompetent to stand trial. The alleged incompetency arose from
appellant's physical condition. That is, he purportedly was too physically (as opposed to
mentally) ill "to be heard in a meaningful manner" since "his concerns included whether or
not there was a receptacle available to catch his vomitus at an appropriate time." We
overrule the point.

 In effect, appellant argues that he was incompetent to stand trial, and protests the
trial court's decision to proceed. (1) To be incompetent, as suggested by appellant, he had
to have lacked the ability to understand and assist in defending himself. See Tex. Code
Crim. Proc. Ann. art. 46.02, §1A(a) (Vernon Supp. 2002) (defining incompetency as
lacking a 1) sufficient present ability to consult with the person's lawyer with a reasonable
degree of rational understanding or 2) rational as well as factual understanding of the
proceedings against the person). Furthermore, one is presumed competent until he proves
otherwise by a preponderance of the evidence. Id. at art. 46.021A(b). Finally, we cannot
overturn a finding of competence unless it is so against the great weight and
preponderance of evidence as to be manifestly unjust. Meraz v. State, 785 S.W.2d 146,
155 (Tex. Crim. App. 1990); Jackson v. State, 857 S.W.2d 678, 680 (Tex. App.-Houston
[14th Dist.] 1993, pet ref'd). 

 Aside from unsworn comments made by his counsel prior to trial, appellant cites us
to no evidence illustrating that he lacked the present ability to consult with his attorney with
a reasonable degree of rational understanding or that he lacked a rational or factual
understanding of the proceedings against him. Rather, we are simply directed to twelve
volumes of the record (comprising 1000 to 1500 unnumbered pages) wherein "information,
letters, and medical records demonstrating the level of [his] illness" supposedly appear. (2) 
Yet, it is not our duty to search for evidence supporting an appellant's argument; it is his
duty to directly cite us to it. Tex. R. App. Proc. 38.1(h). Thus, appellant's mere allusion
to the record is not enough to show that the trial court's implicit finding of competence was
against the great weight and preponderance of the record. Nor do his references to trial
counsel's argument uttered below fill the void; this is so because unsworn comments by
trial counsel are not evidence. Guzman v. State, 923 S.W.2d 792, 798 (Corpus Christi
1996, no pet). 

 Simply put, appellant did not carry his burden to show us that error occurred below. 
Thus, we reject his claims regarding incompetency. 


Issue Two - Replacing a Seated Juror


 Next, appellant contends that the trial court erred in replacing a seated juror after
trial began. The juror in question professed sympathy for the appellant upon discovering
that appellant suffered from a heart condition and the doctor who treated appellant was the
one who treated the juror's spouse. This doctor, according to the juror, allegedly brought
his wife back from death. In turn, the doctor's act of reviving the juror's wife somehow
caused the juror to repose sympathy upon other patients helped by the doctor. 
Additionally, mention of the doctor caused the juror to become distracted which, in turn,
caused him not to "hear some of the testimony" and "pay much attention to" the testimony. 
The juror also stated that: 1) he was "prejudiced in a sense that [he did not] want to see
anything happen to" appellant; 2) he was not "100% unbiased;" 3) he could find appellant
guilty; 4) he could assess punishment "but [his] decision could be affected" in favor of
appellant; 5) he could assess a life sentence but "a five year sentence would probably be
a life sentence for him;" and, 6) the relationship "could affect how [he] view[ed] the facts
of the case." According to appellant, these circumstances did not render the juror ill or
disabled, and, therefore susceptible to removal. This was especially so when the trial court
thought he "could make a good juror." (3) Thus, removal of the individual allegedly was
improper. We overrule the point.

 Jurors who have become disabled may be excused from serving. Tex. Code Crim.
Proc. Ann. art. 36.29(a). The Texas Court of Criminal Appeals has included in the
category of "disabled" any condition that inhibits the individual from fully and fairly
performing the functions of a juror. Ramos v. State, 934 S.W.2d 358, 369 (Tex. Crim. App.
1996). Moreover, lacking the ability to concentrate due to emotional stress caused by a
death in the family, a family illness, or time pressures of a new job have been held
examples of such disabling conditions. Id. 

 Here, the juror indicated that he could render a guilty verdict and assess
punishment. Yet, he also confirmed that discovery of the relationship between appellant
and the doctor who saved the life of the juror's wife caused him to be distracted and
emotional. Again, he "didn't pay much attention to the testimony" once the doctor's name
was mentioned. So too did he reveal that he did not want anything to happen to appellant,
that he could not be 100% unbiased, that he thought five years equated a life sentence
given appellant's alleged health, and that the relationship could affect his view of the facts. 
These circumstances evinced emotional stress affecting the juror's ability to concentrate
upon the evidence and argument being presented, a task implicit in the duties of a juror. 
They also created basis upon which the trial court could hold the juror disabled under the
auspices of Ramos. Thus, the decision to remove the juror did not fall outside the zone
of reasonable disagreement and constitute an instance of abused discretion. See Reyes
v. State, 49 S.W.3d 552, 554 (Tex. App. -- Houston 2001, pet ref'd) (holding that the
decision whether to remove a juror is one which lies within the trial court's considered
discretion). 


Issue Three - Evidence of a Prior Conviction


 Appellant next complains about the trial court's decision which allowed the
prosecution to admit evidence of appellant's prior conviction for aggravated assault. The
assault occurred in 1991 (approximately 7 years before the killing at bar) and involved
appellant shooting the same individual he eventually killed at bar, namely his 37 year old
step-son. According to appellant the evidence was inadmissible because 1) his medical
condition had deteriorated over time and 2) the undue prejudicial affect of the evidence
substantially outweighed its probative value. We overrule the issue. 

 When prosecuting one for murder, the State is authorized to offer evidence of "all
relevant facts and circumstances surrounding the killing and the previous relationship
existing between the accused and the deceased . . . ." Tex. Code Crim. Proc. Ann. art.
38.36(a). Consequently, evidence of a prior assault by the accused upon the victim is
admissible. Baker v. State, 368 S.W.2d 627, 632 (Tex. Crim. App. 1963); Thompson v.
State, 677 S.W.2d 73, 78 (Tex. App.-Beaumont 1983, pet ref'd). And, that the assault
occurred seven years before the eventual murder did not render the evidence too remote. 
See Stephen v. State, 293 S.W.2d 789, 790 (Tex. Crim. App. 1956) (noting that an incident
occurring eight years before the murder was not too remote). Given this authority, we can
but only hold that the trial court had basis to admit the evidence of the prior assault. 

 Next, how appellant's deteriorating medical condition rendered the admissible
evidence inadmissible goes unexplained by appellant. He supports his conclusory
statement to that effect with neither citation to the record nor with analysis of any sort. (4) 
Furthermore, his mere allusion to Smith v. State, 5 S.W.3d 673 (Tex. Crim. App. 1999), is
quite inapposite. In Smith, the court simply held that art. 38.36(a) of the Code of Criminal
Procedure did not supercede 403 or 404(b) of the Texas Rules of Evidence. Id. at 679. 
The case did not address the issue appellant utters before us. 

 Similarly absent is any explanation, analysis and legal citation illustrating how the
probative value of the evidence was substantially outweighed by its alleged prejudicial
affect. He simply concludes that application of Rule 403 barred admission of the prior
conviction. Yet, again, cursory briefing like that before us does not comply with Rule
38.1(h) of the Texas Rules of Appellate Procedure and results in waiver of the contention. 
Tong v. State, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000) (holding that an appellant must,
at the very least, ground his contention in analogous case law or provide the court with a
relevant jurisprudential framework for evaluating his claim to comply with the briefing
requirements). 

 Issue Four - Hearsay Statements


 Appellant contends, in his fourth issue, that the trial court erred by allowing
"Lieutenant White to testify to what Mrs. Matthews told him when he took her written
statement." At trial, Mrs. Matthews (appellant's wife) was asked if appellant had threatened
to kill her and the decedent. She exclaimed that she did not remember. At that point, the
prosecution tendered to her a written statement she previously identified as being her own. 
After reading the document, she again acknowledged that the statement was hers,
conceded that she could have said something about a threat, and then replied that she did
not recall uttering such a comment, however. Later, the State called White who, when
asked, confirmed that Mrs. Matthews said appellant threatened her and the decedent. This
was objectionable, according to appellant, because Matthews had not unequivocally
denied making the statement. We overrule the point.

 One cannot impeach a witness through a prior inconsistent statement if the witness
unequivocally "admits" that he made the statement. Broden v. State, 923 S.W.2d 183, 188
(Tex. App.-Amarillo 1996, no pet). However, in equivocating or otherwise qualifying his
answer, the witness renders the prior inconsistent statement admissible. Id. Here, Mrs.
Matthews equivocated when answering the prosecutor about whether her husband
threatened her and her son with death. So too did she equivocate when asked if she
previously stated that such threats had been made by appellant. Thus, the prosecution
was free to call Officer White to impeach her with her prior inconsistent statement, and the
trial court did not err in permitting that to occur.

Issue Five - Charge Error


 In his final point, appellant contends that the trial court erred by including in the jury
charge an "instruction on provoking the difficulty." We overrule the issue.

 Both common and statutory law recognize that one who provokes the use of force
cannot claim self-defense. Smith v. State, 965 S.W.2d 509, 512 (Tex. Crim. App. 1998);
Tex. Penal Code Ann. 9.31(b)(4) (Vernon 2002) (stating that "if the actor provoked the
other's use or attempted use of unlawful force" the actor's use of force is not justified). 
However, before the trial court may instruct the jury about this rule of law, certain evidence
must appear of record. That is, there must be some evidence from which a rational jury
could conclude beyond reasonable doubt that 1) the defendant did some act or used some
words which provoked the attack on him, 2) the act or words were reasonably calculated
to provoke the attack, and 3) the act was done or words uttered for the purpose and with
the intent that the defendant would have a pretext for inflicting harm upon the other. Smith
v. State, 965 S.W.2d at 513. 

 Next, if the trial court believed that such evidence existed and, therefore, submitted
the instruction, our task is to assess its decision by viewing the record in a light most
favorable to the decision. Id. at 514. And, in making this assessment, we must remember
that provocation involves a devious mind, id., or one that is necessarily crafty or designing. 
Id. at 518. Indeed, we recognize that few would admit to contriving and then pursuing a
course of conduct designed to cause another to attack him for the purpose of justifying his
own responsive attack. Because of this, the circumstances surrounding the incident are
all important. They include words and deeds occurring immediately before and during the
attack. Also, those occurring later as well as those indicative of the pre-existing
relationship between the parties can be quite informative, as suggested throughout the
Smith opinion. 

 Here, we find evidence of record illustrating a less than amicable relationship
between appellant and the 37 year old step-son. The latter periodically lived with his
mother and appellant. Furthermore, on one previous occasion appellant shot his step-son
with a firearm. That incident resulted in appellant being convicted for assault and
sentenced to prison for two years. Additionally, on the day of the killing, the victim had
been using appellant's tools to fix a car. Apparently upon completing his work, he went to
bed. Thereafter, appellant discovered that one of his tools (a socket) was missing and
grew angry. He then acquired a handgun from his room, returned to the living area, sat
down, and placed the deadly weapon next to him in plain view. During this time, his step-son remained in his bedroom apparently asleep. These circumstances caused appellant's
wife to grow concerned. So, she not only attempted to find the socket herself but also
awakened her son for help in finding the missing tool. Whether her concern grew as a
result of hearing appellant threaten her life and that of her son is unknown, but there is
evidence of record illustrating that such threats were made. (5) 

 Appellant and his step-son subsequently encountered each other in the living room. 
At that point, the two spoke momentarily, during which time the victim offered to buy a new
socket. According to appellant's wife, her son then entered the kitchen, obtained a frying
pan, returned and hit appellant with it approximately twice. In response, appellant shot him
with the handgun. 

 As previously mentioned, provocation involves a devious, scheming mind. It is not
something subject to easy assessment because the judge and fact-finder must try to
determine what the defendant was thinking. That is no less true here. Nevertheless, if
circumstances illustrated that 1) X was mad at and threatened to kill Y, 2) X shot Y with a
firearm on a previous occasion, and 3) X obtained a handgun prior to encountering Y and
openly displayed it when the two subsequently interacted, a rational jury would have before
it some evidence which it could construe, beyond reasonable doubt, as an act of
provocation by X. These circumstances also would permit one to reasonably infer that Y
was aware of X's mental state, the gun, and X's prior use of the gun against Y. So too
would those circumstances authorize a rational jury to conclude, beyond reasonable doubt,
not only that X could reasonably expect Y to attack (if for no reason other than self-preservation) but also that X intended to provoke the conflict. (6) 

 Aside from the use of the labels "X" and "Y", circumstances mentioned in the
preceding paragraph is the very evidence found in the record here. And, more importantly,
the conclusions alluded to are the very ones which a rational jury could have made at bar
from that evidence. Consequently, we have no dispute with the trial court's decision to
instruct the jury on provocation. 

 Accordingly, we affirm the judgment of the trial court.

 

 Brian Quinn

 Justice


Do not publish.
1. Appellant does not contend that the trial court erred in failing to hold a hearing to determine if he was
incompetent due to illness. Nor does he say that the trial court should have submitted the issue to a jury. 
Rather, he questions the court's decision to proceed with trial when he was unable "to understand and assist
in defending himself."
2. How these documents show that appellant lacked 1) the present ability to assist in his defense or 2)
a rational understanding of the proceeding also goes unexplained. Moreover, to the extent that appellant
failed to provide citation to the record, we note that his explanation for doing so is not an acceptable excuse. 
While a "reference copy" of the record may not have been made for his personal use, the appellate record
was readily accessible through the clerk of this court, had he asked for it. Nowhere do we see where he
asked for it.
3. The act of removing the juror tends to contradict the trial judge's statement that he thought the
individual "could make a good juror" in this particular case. As the old adage goes, acts speak louder than
words. 
4. To the extent that appellant could be heard as suggesting that his physical condition some how
prevented him from attacking his step-son, the record itself would belie that. Therein, we find evidence of his
becoming angry with the decedent, acquiring a handgun, and shooting him. That, at the very least, suggests
that he was physically capable of acting in a way injurious to others irrespective of his motives. 
5. As illustrated under issue four, this evidence was offered as a prior inconsistent statement of the wife. 
Whether consideration of that evidence is limited simply to impeachment purposes is not something we need
to address, for no limiting instruction was requested from or afforded by the trial court. See Willover v. State,
70 S.W.3d 841, 848 n. 8 (Tex. Crim. App. 2002) (holding that prior inconsistent statements are admissible
for impeachment purposes). And, having been admitted without an accompanying instruction restricting its
use, the factfinder was entitled to consider it for all purposes. Garcia v. State, 887 S.W.2d 862, 878-79 (Tex.
Crim. App. 1994) (holding that once evidence is admitted without a limiting instruction, it becomes part of the
general evidence of the case and may be considered as proof to the full extent of its rational persuasive
power).
6. As the Smith court recognized in quoting from Flewellen v. State, 83 Tex. Crim. 568, 204 S.W. 657
(1918), ill will and bad feelings towards the decedent sheds light upon the appellant's intent at the time. Smith
v. State, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998).