PD-1364-17

PD-1364-17
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/9/2018 3:13 PM
Accepted 3/9/2018 4:11 PM
DEANA WILLIAMSON
CLERK

FILED
COURT OF CRIMINAL APPEALS
3/9/2018
DEANA WILLIAMSON, CLERK

NO. _____

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

---

**RICKY ALLEN DYISE,**

        **Appellant/Petitioner**

**VS.**

**THE STATE OF TEXAS,**

        **Appellee/Respondent**

---

ON APPEAL IN CAUSE NO. 05-16-01408-CR
FROM THE FIFTH DISTRICT OF TEXAS AT DALLAS
IN CAUSE NO. F16-54228-M

---

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

---

**Juanita Bravo Edgecomb**
State Bar No: 24029529
**Attorney for Appellant**

306 Sixth St.
Waxahachie, TX  75165
(972) 845-7131 (PH)
(469) 342-8057 (fax)
**edgelaw@live.com**

# LIST OF PARTIES

**APPELLANT**
Ricky Allen Dyise

**APPELLEE**
The State of Texas

**DEFENSE COUNSEL AT TRIAL**
Nicolas Quezada
Dallas County Public Defender's Office
133 N. Riverfront Blvd,
Dallas, TX 75207

**TRIAL COURT JUDGE**
The Honorable Ernest White
194th District Court of Dallas County, Texas
133 N. Riverfront Blvd, 7th Fl.
Dallas, TX 75207-4313

**STATE'S ATTORNEY AT TRIAL**
Meredith Behgooy
Frank Crowley Criminal Courts Building
133 N. Riverfront Blvd
Dallas, TX 75207-4313

**APPELLANT'S ATTORNEY AT 5TH COURT OF APPEALS**
Juanita Bravo Edgecomb
Attorney at Law
306 Sixth Street
Waxahachie, Texas 75165

**STATE'S ATTORNEY ON APPEAL**
Grace E. Shin
Frank Crowley Criminal Courts Building
133 N. Riverfront Blvd
Dallas, TX 75207-4313

**STATE'S PROSECUTING ATTORNEY**
P. O Box 12405
Austin, Texas 78711

**APPELLATE COURT JUDGES:**
The Honorable Francis, Evans and Boatright
5th Court of Appeals
600 Commerce St, Suite 200
Dallas, Texas 75202

# TABLE OF CONTENTS

IDENTITY OF PARTIES ................................................................ii-iii

TABLE OF CONTENTS.....................................................................iv

INDEX OF AUTHORITIES ...................................................................v

STATEMENT REGARDING ORAL ARGUMENT ...........................................1

STATEMENT OF THE CASE ...............................................................1

STATEMENT OF PROCEDURAL HISTORY ...............................................2

GROUND FOR REVIEW NO. 1 ...........................................................3

**The Court of Appeals erred in reaching its conclusion that the Record was unclear as to whether Appellant's trial counsel provided effective representation by failing to investigate Appellant's priors and "opening the door" to extraneous offenses and/or bad character evidence when *the record clearly reflected* that it served no purpose to inquire into Appellant's violent demeanor other than to prejudice Appellant's ability to present a defense.**

PRAYER FOR RELIEF ......................................................................13

CERTIFICATE OF SERVICE ................................................................14

APPENDIX A: [COA Opinion] ..............................................................15

iv

# INDEX OF AUTHORITIES

**CASES**:

*Abnor v. State,*
    871 S.W.2d 726 (Tex. Crim. App. 1994) ........................................................7

*Andrews v. State,*
    159 S.W.3d 98 (Tex. Crim. App. 2005). ......................................................7

*Black v. State,*
    816 S.W.2d 350 (Tex. Crim. App. 1991) .......................................................5

*Butler v. State,*
    716 S.W.2d 48 (Tex. Crim. App. 1986) ........................................................9

*Cook v. State,*
    240 S.W.3d 906 (Tex. Crim. App. 2007) .......................................................9

*Doles v. State,*
    786 S.W.2d 741 (Tex. App. – Tyler 1989, no pet.) .......................................8

*Ex parte Harrington,*
    310 S.W.3d 452 (Tex. Crim. App. 2010) .......................................................9

*Garcia v. State,*
    308 S.W.3d 62 (Tex. App. – San Antonio, 2009) ..................................... 7-8

*Hernandez v. State,*
    726 S.W.2d 53 (Tex. Crim. App. 1986) .......................................................5

*Jackson v. State,*
    857 S.W.2d 678 (Tex. App. – Houston [14th Dist.] 1993, pet. ref'd) .............9

*McWherter v. State,*
    624 S.W.2d 712 (Tex. App. – Houston [14th Dist.] 1981) ...........................10

*Melgar v. State*,
   236 S.W.3d 302 (Tex. App – Houston [1ˢᵗ Dist.], 2007, pet. ref'd)..............10

*Nobles v. State*,
   843 S.W.2d 503 (Tex. Crim. App. 1992) ......................................................7

*Powell v. State*,
   63 S.W.3d 435 (Tex. Crim. App. 2001).......................................................10

*Robbins v. State*,
   88 S.W.3d 256 (Tex. Crim. App. 2002).......................................................10

*Robertson v. State*,
   187 S.W.3d 475 (Tex. Crim. App. 2006).......................................................7

*Robertson v. State*,
   214 S.W.3d 665 (Tex. App. – Waco, 2007) ...................................................7

*Stokes v. State*,
   298 S.W.3d 428 (Tex. App. – Houston [14ᵗʰ Dist.] 2009, pet. ref'd) .............9

*Strickland v. Washington*,
   466 U.S. 668 (1984) ......................................................................................5

## Code

TEX. CODE CRIM. PROC. ART 37.07, SEC. 3(g) ..........................................................6

## Statutes

TEX. CONST., ART. I § 10 ..........................................................................................5

U.S. CONST. VI..........................................................................................................x

U.S. CONST. XIV........................................................................................................x

## Rules

TEX. R. EVID. 403 ................................................................................................10

TEX. R. EVID. 404(a) ..........................................................................................10

TEX. R. EVID. 404(b) ..........................................................................................10

**TO THE COURT OF CRIMINAL APPEALS OF TEXAS:**

Appellant/Petitioner respectfully submits this Petition for Discretionary Review and moves that this Honorable Court grant review of this cause and offers the following in support thereof:

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant/Petitioner requests oral argument in this case because such argument may assist the Court in applying the facts to the issues raised. It is suggested that oral argument may help simplify the facts and clarify the issues.

## STATEMENT OF THE CASE

Appellant was convicted of Obstruction/Retaliation. Appellant was found guilty and subsequently assessed a punishment at ten (10) years imprisonment, suspended for six (6) years community supervision, and a $1,000 fine.

1

# PROCEDURAL HISTORY

In Cause No. F16-54228 the Appellant/Petitioner was charged with the offense: Obstruction / Retaliation in the 194th District Court of Dallas County, the Honorable Ernest White, presiding. The Appellant/Petitioner was convicted of such offense on October 20, 2016 and appealed the conviction. On December 8, 2017, the 5th Court of Appeals affirmed the conviction. No motion for rehearing was filed. On February 20, 2018 this Petition for Discretionary Review was timely forwarded to the Court of Appeals for filing pursuant to Rule 9.2(b), Texas Rules of Appellate Procedure.

## GROUND FOR REVIEW No. 1

**The Court of Appeals erred in reaching its conclusion that the Record was unclear as to whether Appellant's trial counsel provided effective representation by failing to investigate Appellant's priors and "opening the door" to extraneous offenses and/or bad character evidence when the record clearly reflected that it served no purpose to inquire into Appellant's violent demeanor other than to prejudice Appellant's ability to present a defense.**

## ARGUMENT NUMBER ONE

At trial, Appellant's trial counsel "opened the door" to extraneous offenses which benefitted the State to introduce Appellant's extensive criminal record. Appellant's trial attorney, then failed to object to the introduction of these extraneous offenses. Defense counsel also admitted, on the record, that he failed to investigate the nature of these extraneous offenses which again, "opened the door" to bad character evidence. This failure allowed the State to paint Appellant as the type of person who acted in conformity with the charged behavior and was therefore more likely to have committed the charged offense.

No reasonably competent attorney would have "opened the door" to extraneous offense in such circumstances unless the trial attorney was not familiar with Appellant's criminal history. There could be no possible trial strategy for failing to investigate your own client's criminal history, particularly one on trial for a Retaliation case coupled with a history of a violent past, and then asking him:

3

"do you consider yourself in any way, shape, or form a violent person?" (RR3: 161-164). Counsel's failure to investigate Appellant's criminal record fell below an objective standard of reasonableness and likely prejudiced the outcome of Appellant's trial.

The Fifth Court of Appeals rejected Appellant's ineffective assistance of counsel claim because it argued rarely will the record "on direct appeal" be developed to a point that it can "adequately reflect the failings of trial counsel." (Mem. Op. at *5). Therefore, the Court reasoned that when direct evidence is not available, it assumed counsel had a strategy, "if any reasonably sound strategic motivation can be imagined." *Id.* The Court used this finding to dispose of Appellant's claim of ineffective assistance of counsel, reasoning that "a silent record" which offers no explanation for trial counsel's strategy cannot be "denounced as ineffective" because the record provides "no explanation for counsel's actions or omissions." *Id.* at *5-6.

Contrary to the Court of Appeals opinion, the law and the record demonstrate that the Court of Appeals should have reversed and remanded this case for a new trial because (1) there can be no possible reasonable trial strategy for "throwing your client under the bus" and (2) the record is clear there was no objectively reasonable explanation for trial counsel's failure to investigate his own

4

client's criminal history and then concede he had erred in "opening the door" and then file a motion in limine to preclude the state from introducing the violent criminal history, and then ask his own client about the very evidence he attempted to prevent the state from introducing. Trial counsel's actions constituted ineffective assistance of counsel.

A criminal defendant is entitled to effective representation at trial. U.S. CONST. Amends VI, XIV; TEX. CONST. Art. I §10. To establish an ineffective assistance of counsel claim, a defendant must show that: (1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Black v. State*, 816 S.W.2d 350, 356 (Tex. Crim. App. 1991); *Hernandez v. State*, 726 S.W.2d 53–55 (Tex. Crim. App. 1986).

Under the first part of the *Strickland* test, deficient performance is established by showing that counsel made errors so serious that counsel was not functioning as the "counsel guaranteed" by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Under the second part of the *Strickland* test, prejudice is established by showing that counsel's errors were so serious as to deprive the defendant of a fair trial; *i.e.*, that there is a reasonable probability that, but for counsel's

5

unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 687. On direct appeal, the question of whether Appellant's trial counsel was ineffective focused on there being "no record" to establish trial counsel's strategy.

**The Trial Record – Extraneous Offenses**:

1) Prior to trial, the State filed: "State's Notice of Intent to Introduce Evidence of Extraneous Offenses pursuant to Tex. R. Crim. Evid. 404(b), Tex. Code Crim Proc. Art. 37.07, sec 3(g)." (CR: 37-40).

2) Appellant's counsel made an "on record" argument referencing the State's Notice and filed his own Motion in Limine asking that the State not be allowed to go into Appellant's prior convictions unless they approached. (RR2: 4-5) (RR3: 6).

3) Appellant's trial attorney was clearly aware of Appellant's priors: "**the officer who wrote the report mentions that as one of the basis, I guess, for his fear, which is sort of an element of the offense, he says that the defendant has a prior violent history.**" (RR2: 5-6).

4) During the cross of the officer who wrote the report, **Appellant's trial counsel inquired into why he "feared" Appellant**. (RR3: 72-74).

5) The State argued Appellant "opened the door" to extraneous offenses; the court agreed; Appellant's trial counsel did not object, but merely stated:

6

"Sure, I understand." (RR3: 72-74).

An accused may be tried *only* for the offense charged and not for some collateral crime or for being a criminal generally. *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992). The introduction of extraneous offenses to the jury is inherently prejudicial and can harm a defendant because it requires the defendant to defend against not only the charged offense but also his uncharged actions. *Abnor v. State*, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994).

Defense counsel can be held to be ineffective if there is no reasonable trial strategy for bringing inadmissible prior convictions to light. *Garcia v. State*, 308 S.W.3d 62, 68 (Tex. App. – San Antonio, 2009). When there is no reasonable trial strategy that can justify trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects trial counsel's subjective reasons for acting as he did. *Andrews v. State*, 159 S.W.3d 98, 101-102 (Tex. Crim. App. 2005); *Robertson v. State*, 187 S.W.3d 475 (Tex. Crim. App. 2006), reversed and remanded by *Robertson v. State*, 214 S.W.3d 665 (Tex. App. – Waco, 2007).

There is no strategic value to allow admission of prejudicial and clearly inadmissible evidence. *Robertson v. State*, 187 S.W.3d at 484-86 (holding that where defense depended on defendant's credibility, there was no possible

7

reasonable strategy and defense counsel rendered deficient performance by intentionally eliciting and opening the door to otherwise inadmissible evidence); *See also Garcia v. State*, 308 S.W.3d at 68-69 (Tex. App. – San Antonio, 2009, no pet.) (defense counsel opening door to extraneous offenses served no purpose other than prejudicing defendant's ability to present a defense); *Doles v. State*, 786 S.W.2d 741, 746 (Tex. App. – Tyler 1989, no pet.) (trial counsel's failure to make objections to evidence of extraneous offenses was ineffective assistance which adversely affected appellant's defense).

**The Trial Record – Failure to Investigate**:

1) Appellant testified on his own behalf. During direct, his trial attorney asked him: "do you consider yourself to be in any way, shape, or form a violent person?" Appellant denied he was a violent person. (RR3: 161).

2) The State argued Appellant "opened the door" to bad character evidence. (RR3: 164, 171).

3) Appellant's violent priors came into evidence which included notice of a protective order issued against Appellant. (RR3: 178-180).

4) Appellant's trial attorney argued he had not reviewed the protective order prior to trial, although a copy was available for his view on Monday. (RR3: 180-182).

8

**5) The trial court asked trial counsel: "any reason you didn't ask to see it on Monday?" Trial counsel replied: "No, your Honor." (RR3: 180-182).**

An ineffective assistance of counsel claim may be based on inadequate performance during the investigation or preparation of the case. *Butler v. State*, 716 S.W.2d 48, 54-57 (Tex. Crim. App. 1986); *Jackson v. State*, 857 S.W.2d 678, 683 (Tex. App. – Houston [14th Dist.] 1993, pet. ref'd). However, a claim for ineffective assistance based on trial counsel's general failure to investigate fails absent a showing of what the investigation would have revealed that reasonably could have changed the result of the case. *Cook v. State*, 240 S.W.3d 906, 912 (Tex. Crim. App. 2007); *Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App. – Houston [14th Dist.] 2009, pet. ref'd); *See also Ex parte Harrington*, 310 S.W.3d 452, 459 (Tex. Crim. App. 2010) (counsel's failure to conduct even a cursory investigation into a prior DWI conviction which was used to enhance to a felony DWI constituted deficient performance).

In this case, trial counsel's error reasonably changed the result of the trial given that the State was given the opportunity to question Appellant about specific instances of conduct including that a protective order existed, that he got into fights and interfered with public duties. (RR3: 183, 186). As such, trial counsel's representation can only be characterized as ineffective.

9

## The Trial Record – Bad Character Evidence:

1) Appellant's trial counsel elicited the following exchange:

> [COUNSEL]:  **I mean, do you – do you – do you consider yourself to be in any way, shape, or form a violent person?**
>
> [DYISE]:  **I'm not a violent person.**

(RR3: 161).

2) The State argued Appellant "opened the door" to bad character evidence. (RR3: 164, 171).

3) Appellant's violent priors came into evidence. (RR3: 178-180).

In general, evidence of a pertinent character trait offered by an accused in a criminal case, or by the prosecution to rebut the same, is admissible. Tex. R. Evid. 404(a)(1)(A). Texas law provides, "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." TEX. R. EVID. 404(b). Despite its admissibility under Rule 404(b), or any other rule of evidence, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." TEX. R. EVID. 403.

The introduction of character evidence may be admissible when it is relevant

10

to a noncharacter conformity fact of consequence in the case, such as rebutting a defensive theory. *Robbins v. State*, 88 S.W.3d 256, 259 (Tex. Crim. App. 2002); *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). Generally, character evidence is not admissible to show that a person acted in conformity with a character trait on a particular occasion. Tex. R. Evid. 404(a). However, an accused in a criminal case is permitted to introduce evidence of a specific good-character trait to show that it is improbable that he committed the charged offense, when that character trait is relevant to the offense. *Id.* A "pertinent character trait" relates to a trait involved in the offense charged or a defense raised. *Melgar v. State*, 236 S.W.3d 302, 306-307 (Tex. App – Houston [1st Dist.], 2007, pet. ref'd). When the accused believes that his case will be strengthened by proof of his good character, the door may be opened to proof by the prosecution that the accused's character is actually bad. *McWherter v. State*, 624 S.W.2d 712 (Tex. App. – Houston [14th Dist.] 1981).

In a prosecution for a crime of violence, the defendant's character for being peaceful is pertinent, because evidence of peaceful character makes it less likely that the defendant committed the crime charged. *Id.* By asking Appellant if he considered himself to be a "violent person" in a retaliation case was clearly a high risk move especially when trial counsel admitted he did not investigate his prior

11

offenses. Trial counsel opened the door to the very evidence he tried to exclude in his Motion in Limine. Once Appellant denied he was a violent person, the State exploited the bad character evidence and argued it was admissible to rebut any defensive theory that Appellant had "never before been in this much trouble." (RR3: 177).

Appellant's trial counsel fell below an objective standard of reasonableness because he questioned the witness and his own client about his own client's priors without conducting an investigation into the priors and by inquiring into a witnesses' fears when he knew what the answer would be. There could be no possible strategy for the inquiry unless you intend to prejudice your client to the point that it prevents Appellant from receiving a fair trial and there is a reasonable probability that, but for his trial counsel's unprofessional errors, the result of the proceeding would have been different.

Failing to investigate opened the door to Appellant's prior violent criminal record. Up to that point, the jury had a mental picture of a homeless man who got into an altercation with an officer. This could have resulted in an acquittal rather than conviction.

The Court of Appeals improperly concluded there was no explanation for trial counsel's actions or omissions, therefore he could not be "denounced as

12

ineffective." Trial counsel admitted, on the record, he had "no reason" for his failure to investigate and given his actions, there is no possible sound strategic motivation which can be imagined but to prejudice Appellant. Appellant is entitled to have his conviction reversed and his cause remanded for a new trial.

## PRAYER FOR RELIEF

For the reasons stated above, it is respectfully submitted that the Court of Criminal Appeals of Texas should grant this Petition for Discretionary Review.

Respectfully submitted,

**/S/ Juanita Bravo Edgecomb**

Juanita Bravo Edgecomb
State Bar Number: 24029529
ATTORNEY FOR APPELLANT

306 Sixth St.
Waxahachie, Texas 75165
(972) 845-7137 (*telephone*)
(469) 342-8057 (*fax*)
edgelaw@live.com

13

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the total number of words in the document, excluding those contents set out in the rule, is <u>2,255</u> words (including textboxes, footnotes and endnotes), as computed by the program used to prepare the document, <u>Microsoft Word 2016</u>.

**/S/ Juanita Bravo Edgecomb**

Juanita Bravo Edgecomb

## CERTIFICATE OF SERVICE

The undersigned Appellant/Petitioner hereby certifies that a true and correct copy of the foregoing Petition for Discretionary Review has been hand delivered and e-served to the District Attorney, Appellate Division, Frank Crowley Criminal Courts Building, 133 N. Riverfront Blvd., Dallas, TX 75207 and mailed to the State Prosecuting Attorney, P. O. Box 12405, Austin, Texas 78711, on this the 8th day of March, 2018.

**/S/ Juanita Bravo Edgecomb**

Juanita Bravo Edgecomb

# Appendix

# A

# [ATTACH COPY OF OPINION]



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-16-01408-CR

**RICKY ALLEN DYISE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 194th Judicial District Court
Dallas County, Texas
Trial Court Cause No. F-1654228-M

## MEMORANDUM OPINION

Before Justices Francis, Evans, and Boatright
Opinion by Justice Francis

After a jury convicted Ricky Allen Dyise of retaliation for threatening to assault a police officer who had arrested him, the trial court assessed punishment at ten years in prison, suspended for six years' community supervision, and a $1,000 fine. In a single issue, appellant contends he received ineffective assistance of counsel. For reasons discussed below, we overrule this issue. On our own motion, we modify the trial court's judgment to reflect the trial court assessed punishment, which included a fine. We affirm the judgment as modified.

Appellant is homeless and lives on the streets of Dallas. Police Sgt. Ross Stinson was assigned to the Central Business District, an area of downtown Dallas with a homeless population. Stinson was on patrol on April 23, 2016 when he saw appellant asleep on the

sidewalk and "jostled" his foot to awaken him. He asked if appellant was okay and told him to go somewhere else to sleep. After complaining, appellant walked away but then returned.

Officer Brad Hance was at the scene with Stinson. Hance checked appellant's ID and discovered three outstanding warrants for public intoxication. When Stinson told appellant he was being arrested on warrants, appellant began walking away. Appellant became irate and "balled his fist." To deescalate the situation, Stinson pulled out his Taser and told appellant again that he was under arrest. The officers were then able to handcuff appellant.

Hance transported appellant to the City Detention Center. During the drive, Hance said appellant was "very upset" and "very loud" and said, several times, that if Stinson had tased him, appellant would have killed him. Appellant also said that if Stinson did not "quit fucking with people" in that area, he was "going to get killed." Once they arrived at the CDC, appellant saw Stinson and loudly said if "you pull a Taser at me again, I'm gonna shoot you in the head."

Sgt. Timothy Parker of the Dallas Marshal's Office was on duty at the CDC when appellant was brought in. Appellant was irate, screaming, and perspiring. Appellant was looking over his shoulder and making statements to Officer Hance "to the effect that mother - - needs to watch out; somebody's going to kill him; if he'd hit me, I'd - - I'd shot him." Parker subsequently learned appellant was referring to Stinson, who was in the back writing his arrest report. Appellant stood out to Parker because, unlike many of the arrestees who went through the CDC and made threats, appellant did not appear to be drunk or high. Rather, Parker said appellant was "just extremely violent" and was "grunting" and "snorting" and using his head to "punctuate what he was saying."

When Stinson finished making his report and walked out of the back of the building, Parker and Hance told him about the threats appellant had been making. Although he was concerned, Stinson said he decided to take the matter "under advisement" and, instead of

–2–

arresting appellant, wrote up a bulletin about appellant to give a "heads up" to other officers who might come in contact with him.

Five days later, on April 28, Stinson was driving through the same downtown neighborhood with his car windows down when he saw someone staring at him from a crowd of people. He realized it was appellant. While staring at Stinson, appellant said, "I'm going to fuck you up," and took a "combative stance" with his fists balled up. Stinson recalled the previous threats and was also concerned that appellant's willingness to fight a police officer might lead to his harming a random citizen. So, Stinson stopped and told appellant to come over and place his hands on his vehicle. Appellant refused. Appellant began to shed his clothes, which Stinson believed indicated appellant was preparing for a street fight. Stinson pulled his Taser and called for backup. Ultimately, other officers arrived and appellant was arrested.

Stinson said appellant made threats against him and his family, saying he would kill anybody Stinson loved and "there's nothing safe." According to Stinson, appellant said he was going to kill him and that "you're going to get yours." What particularly concerned Stinson was appellant's statement, "It's not a threat, it's a promise." Stinson was concerned because he and his wife lived in the neighborhood and were frequently in that area. A recording of appellant after he had been restrained was admitted into evidence. On the recording, appellant can be heard talking about the Taser. When the officer asked if he was making threats, appellant responds, "I'm not making no threats; that's a promise." Minutes later, he repeatedly tells the officers standing around him, "Y'all are not going to shock me and get away with it—ever."

On redirect, the trial court allowed Stinson to testify that appellant's criminal background showed appellant had threatened and committed violent crimes in the past. When asked about those offenses, Stinson said he believed there was one retaliation and "like an agg assault." The

–3–

trial court determined appellant's counsel opened the door to this evidence by asking Stinson what specifically caused him to fear appellant.

Appellant testified he did not remember interacting with Stinson during the April 23 incident and did not remember anyone pulling a Taser. He did remember Stinson from the April 28 incident. Appellant said he was walking down the street and could feel someone following behind him in a car. When he looked back, he saw Stinson and said, "What the ef are you looking at." He believed Stinson misheard this statement to be, "I'm going to fuck you up."

Appellant denied trying to provoke a fight that day and said his fists were balled up because he was bracing for being tased. At one point, he testified he normally did not get in "this much trouble," which prompted the State to argue appellant had opened the door to prior criminal convictions. The trial court agreed and allowed the jury to hear evidence that appellant had a protective order issued against him and had 2008 convictions for interfering with public duties and two criminal trespasses, all involving a former girlfriend, as well as convictions in 2000 for theft and criminal trespass. Appellant denied making any threats to kill Stinson or his family and said he harbored no ill will.

In his sole issue, appellant contends counsel provided ineffective assistance. Appellant complains defense counsel either "opened the door" or failed to object to the introduction of extraneous offense and bad character evidence, failed to object to the State's argument that he opened the door to extraneous offenses, and failed to investigate appellant's prior offenses listed in the State's notice of intent to introduce evidence of extraneous offenses.

A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing a fair evaluation of the merits of the claim involving

–4–

such a serious allegation. *Id.* In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel. *Id.*

To prevail on a claim of ineffective assistance of counsel, an appellant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense; that is, but for the deficiency, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective. *Lopez*, 343 S.W.3d at 142.

We must make a "strong presumption that counsel's performance fell within the wide range of reasonably professional assistance." *Id.* To find counsel ineffective, counsel's deficiency must be affirmatively demonstrated in the record, and we must not engage in retrospective speculation. *Id.* When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined. *Id.*

The court of criminal appeals has made clear that, in most cases, a silent record which provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). Further, counsel should ordinarily be accorded the opportunity to explain his actions before being denounced as ineffective. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). Because the reasonableness of trial counsel's choices often involve facts that do not appear in the appellate record, an application for writ of habeas corpus is the more appropriate vehicle to raise ineffective assistance of counsel claims. *See Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

Here, appellant filed a motion for new trial but did not raise a complaint of ineffective assistance of counsel; consequently, the record before us provides no explanation for counsel's actions or omissions. From this record, one could conclude there were legitimate and professionally sound reasons for counsel's conduct or one could speculate that there were not. And, trial counsel has not been given an opportunity to explain. Under these circumstances, we cannot conclude appellant met the requirements of *Strickland*. We overrule the sole issue.

Although neither party has raised the issue, our review of the record reveals two errors in the judgment. The judgment shows the jury assessed punishment and it does not reflect a fine. The reporter's record, however, shows the trial court assessed punishment, which included a $1,000 fine.[1] We have authority to correct a judgment below to make the record "speak the truth" when we have the necessary data and information to do so. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly, we modify the judgment to reflect the trial court assessed punishment, which included a $1000 fine.

We affirm the trial court's judgment as modified.

/Molly Francis/
MOLLY FRANCIS
JUSTICE

Do Not Publish
Tex. R. App. P. 47.2(b)
161408F.U05

---

[1] Acknowledging appellant had no money, the trial court allowed appellant's back time "to take care of the fine and all court cost."

—6—