**Johnny Ray McFARLAND, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–90–397–CR.**

Court of Appeals of Texas, Corpus Christi.

June 18, 1992.

Rehearing Overruled July 30, 1992.

483

Larry Walsh, Brownsville, Larry War-ner, Harlingen, for Appellant.

Luis V. Saenz, County Atty., Crim. Dist., Brownsville, for Appellee.

Before NYE, C.J., and SEERDEN and GILBERTO HINOJOSA, JJ.

## OPINION

NYE, Chief Justice.

A jury found appellant guilty of murder. After making an affirmative finding that the appellant used a deadly weapon, the trial court sentenced him to life in prison. Appellant raises twenty-one points of error. We affirm the trial court's judgment. We briefly review the facts.

Appellant owns his own truck and delivers furniture throughout the country for a company based in North Carolina. The victim, Donald Ray Gurley, accompanied appellant on a delivery to South Texas. On the highway between Harlingen and Edinburg, a motorist saw appellant's truck on the roadside, and saw a man meeting appellant's description chase another man to the back of the truck and shoot him with a handgun. He then saw the first man bending over the victim, but the witness could not discern what the man was doing. The motorist drove to Santa Rosa and notified police. Appellant was apprehended the next day. Appellant made a confession in which he stated that, while they were driving, he threatened to kill Gurley. Appellant pulled over, and Gurley jumped out of the truck. Taking a pistol which he kept in the truck, appellant chased Gurley to the back of the truck where he shot Gurley in the back and in the head.

By his first point of error, appellant claims insufficient evidence exists to convict him because of a fatal variance between the indictment and proof. The indictment alleged that appellant caused the death of Donald Ray Gurley by shooting him. Before trial, the State moved to amend the indictment by adding the allegation that appellant used a deadly weapon. The trial court's order granting the motion recited the victim's name as Donald Ray *Gunley*. The previous indictment, as well as the State's motion to amend, alleged that the victim's name was Donald Ray *Gurley*. The charge and all of the evidence at trial established that the victim was Donald Ray *Gurley*. Appellant argues that the variance is fatal due to the doctrine of *idem sonans*, and therefore an acquittal should be entered.

A material variance between the name of the victim as alleged and as proved will render the evidence insufficient to sustain the conviction. *Gayton v. State*, 732 S.W.2d 724, 725 (Tex.App.—Corpus Christi 1987, pet. ref'd). According to the doctrine of *idem sonans*, if the name alleged and the name proven can be sounded the same, a variance in spelling is immaterial. *Gayton*, 732 S.W.2d at 725. A question involving the rule of *idem sonans* must be raised at trial or it is waived. *Martin v. State*, 541 S.W.2d 605, 608 (Tex. Crim.App.1976); *See Gayton*, 732 S.W.2d at 725; *see also Gayton*, 732 S.W.2d at 727 (Nye, C.J. dissenting). Appellant did not object at any time to any defect in either the form or substance of the indictment. TEX.CODE CRIM.PROC. art. 1.14(b) (Vernon Supp.1992). His contention has been waived. However, we discuss the merits of the issue raised because it is relevant to other points.

Here, no variance exists because the trial court's order did not amend the indictment. Our Court of Criminal Appeals has recently held that an order is not sufficient to effect an amendment to an indictment. The indictment itself must be physically altered. *Ward v. State*, 829 S.W.2d 787 (Tex.Crim.

App.1992); *McHenry v. State*, 829 S.W.2d 803 (Tex.Crim.App.1992). Since the face of appellant's indictment was never altered, the original indictment controls. Thus, appellant was charged with and was convicted of murdering Donald Ray *Gurley*. Point one is overruled.

By point seven, appellant contends that the trial court erred in affirmatively finding that appellant used a deadly weapon in committing the offense because the indictment did not contain that allegation. An affirmative finding of use or exhibition of a deadly weapon must be supported by a written pleading, albeit not necessarily in the indictment. *Luken v. State*, 780 S.W.2d 264, 266 (Tex.Crim.App. 1989). The indictment here alleged that appellant caused Gurley's death by shooting him, but it did not name the implement used. The State filed a separate pleading entitled "Notice of Intention to Seek Affirmative Finding that a Deadly Weapon was Used." In this document, the State declared it would seek an affirmative finding that appellant used a firearm. We find that the State's notice served as a sufficient pleading to support the affirmative finding under *Luken.* *See Hubbard v. State*, 809 S.W.2d 316, 323 (Tex.App.—Fort Worth 1991, pet. granted).[1]

Appellant also complains he did not receive notice that the State would seek the affirmative finding. He did not object to any lack of notice at trial. Nor does he now claim surprise. An accused is entitled to notice that the State will pursue an affirmative finding that the defendant used or displayed a deadly weapon. *Luken*, 780 S.W.2d at 266. The record shows that the State hand-delivered a copy of the requested amendment to appellant's counsel. Moreover, the record contains the State's motion to amend the indictment and the trial court's order amending the indictment. Each clearly showed that the State was seeking a deadly weapon affirmative finding. As previously discussed, these documents were ineffective to amend the indictment. However, we find that these documents, appearing in the record with the State's "Notice of Intent to Seek Affirmative Finding," put appellant on notice that the use of a firearm as a deadly weapon was at issue. "[The] accused is only entitled to notice, in *some form*, that use of a deadly weapon will be a fact issue at trial." *Grettenberg v. State*, 790 S.W.2d 613, 615 (Tex.Crim.App.1990) (although the State abandoned the portion of the two-count indictment containing the deadly weapon allegation, the prosecution's facts were so interrelated that the abandonment of one count did not vitiate notice given under the original indictment). Appellant was provided notice as required under *Luken.* We overrule point seven.

By points five and six, appellant claims the trial court erred in amending the indictment to specify the manner and means of the killing and to specify a different victim. Since the face of the indictment was never altered, it was never effectively amended. The victim's name, as it appeared in the original indictment, was unchanged (*see* point one, *supra*). Although not specified in the original indictment, the manner and means of the killing—shooting with a firearm—was properly charged and proven. The original indictment alleged that appellant caused Gurley's death by shooting. The State sought an amendment in order to obtain a deadly weapon affirmative finding, and appellant received notice of the State's intent to seek the finding. (*See* point seven, *supra*). The proposed amendment specified that appellant used a firearm to cause Gurley's death. The charge required the jury to find that appellant caused Gurley's death by shooting him with a firearm. The State's burden was not decreased by the charge. The jury was required to find,

1. The petition has been granted in *Hubbard.* The Court of Appeals in *Hubbard* held that the State's "Notice of Intent to Seek a Deadly Weapon Finding" provided sufficient notice to the appellant even though the document did not state what kind of weapon the State was going to try to prove. We cite *Hubbard* with approval only to the extent that it held that the "Notice of Intent to Seek a Deadly Weapon Finding" was a sufficient pleading. On the issue of notice, our facts here are significantly different—the State specifically alleged that appellant used a firearm.

and did find, every allegation appearing in the indictment. The charge merely required a more specific finding on the manner and means. The affirmative finding was made pursuant to proper pleading, notice, and proof. It was entered properly upon the decision of the trier of fact. *Polk v. State*, 693 S.W.2d 391, 394–95 (Tex.Crim. App.1985); *see Brown v. State*, 740 S.W.2d 45, 47 (Tex.App.—Houston [14th Dist.] 1987, no pet.) (It was not error for the court to submit the deadly weapon special issue at the guilt/innocence phase when the defendant had elected for the trial court to assess punishment). Points five and six are overruled.

By point two, appellant claims that the trial court erred in failing to suppress the items police retrieved from his truck. Appellant was pulled-over and arrested by Elsa police. The Cameron County Sheriff intervened during the arrest, read appellant his rights, and took him into custody. Appellant gave the Sheriff a signed consent to search. During the search, appellant told the officers that the gun he had used to shoot Gurley was under the truck's radio. Appellant claims that his statement telling officers the location of his gun, and his consent to their search, were tainted by the illegality of the arrest and were involuntary because they were obtained while appellant was in custody.

■ The police had a warrant for appellant's arrest, but did not have a search warrant. At the suppression hearing, appellant argued that no affidavit accompanied the arrest warrant; therefore the warrant was invalid and the arrest illegal. Appellant complains on appeal that the affidavit to the arrest warrant wholly failed to support a finding of probable cause because it stated no facts and was only conclusory. The two objections differ. When the argument on appeal does not comport with that raised at trial, the complaint has been waived. *Thomas v. State*, 723 S.W.2d 696, 700 (Tex.Crim.App.1986); *Vanderbilt v. State*, 629 S.W.2d 709, 721 (Tex.Crim. App.1981), *cert. denied*, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982); *Baldo-*

*nado v. State*, 745 S.W.2d 491, 496 (Tex. App.—Corpus Christi 1988, pet. ref'd).

Appellant's third point of error states contentions similar to points two and thirteen. His argument ends in mid-paragraph, leaving a blank page. A point of error must be supported by argument, authority, and citations to the record or it is waived. Tex.R.App.P. 74.(f).

■ By point thirteen, appellant challenges the voluntariness of appellant's consent to search. Before consent can be effective, the State must prove by clear and convincing evidence that the consent was freely and voluntarily given. *Fancher v. State*, 659 S.W.2d 836, 839 (Tex.Crim. App.1983). Whether consent is voluntary is to be determined from the totality of the circumstances surrounding consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219–227, 93 S.Ct. 2041, 2043–47, 36 L.Ed.2d 854 (1973); *Fancher*, 659 S.W.2d at 839. The fact that the defendant is in custody when he gives consent does not automatically invalidate that consent. Appellant argues on appeal that appellant's arrest was illegal and tainted his consent. He further claims that he was in custody and the officers' guns were drawn when consent was given. To the extent that appellant has failed to show that the arrest was illegal (see point two, *supra*), we find that consent was not tainted. Upon the issue of coercion, it is true that Elsa police apprehended appellant with their guns drawn. However, the officers put their weapons away after they determined that appellant was not armed. No evidence in the record indicates that the officers requested appellant's consent to search with their guns drawn and trained on him. Arresting officers testified at the suppression hearing that appellant was given Miranda warnings when he was arrested. They stated that appellant appeared somewhat nervous around the police. However, he was coherent and very cooperative. Moreover, they stated that the appellant voluntarily signed a written consent to search. The written consent was entered into evidence at the suppression hearing and it states that the consent was knowingly and voluntarily giv-

en. The officers testified at the suppression hearing that they told appellant they found no weapons after searching his truck. Without any further questioning, appellant told them they would find what they were looking for if they would unscrew the bolts to the radio and look behind it. The officers did so and found the gun. There is no evidence that the officers obtained the consent through threats or coercion. They testified that they did not question appellant, but he freely spoke about the incident at the arrest scene and in the car on the trip to the magistrate. He stated that he had shot Gurley because Gurley was having an affair with his wife, and he was glad to "get it off his chest." The trial court did not err in denying appellant's motion to suppress his statement telling officers where the gun was hidden. The appellant's consent to search was not coerced, but was freely and voluntarily given. Point thirteen is overruled.

By his eighth, ninth, and tenth points, appellant complains of errors committed at his competency hearing. A hearing was held to determine if appellant was competent before appellant's trial on the merits. Judge J.R. Alamia conducted the competency hearing rather than the regular judge of the 107th District Court. Appellant maintains that Alamia, as a "special judge," did not have authority to preside over the competency hearing. Appellant never objected below to the assignment of Judge Alamia. He has therefore waived any complaint. TEX.GOV'T CODE ANN. § 74.-053 (Vernon 1988); See Janecka v. State, 823 S.W.2d 232, 243–44 (Tex.Crim.App. 1990) (opinion on motion for rehearing).

By point nine, appellant claims that the trial court erred in proceeding to trial on the indictment because the record does not reflect that the jury's verdict on competence was ever received; nor was judgment ever rendered thereon. We disagree. The statement of facts from the competency hearing reflects that appellant had a separate hearing on the issue of his competency to stand trial. Appellant's family members testified, as did two psychiatrists and appellant's attorney. The trial court submitted the issue of appellant's competence to the jury. The jury returned a verdict that appellant was competent and trial on the merits followed. As appellant never objected to any lack of a formal judgment on competency, the point has been waived. TEX.R.APP.P. 52(a). Point nine is overruled.

By point eleven, appellant claims that the jury's verdict on competency was against the great weight and preponderance of the evidence. Because the accused is presumed competent, a defendant must prove his incompetency by a preponderance of the evidence. Manning v. State, 730 S.W.2d 744, 748 (Tex.Crim. App.1987); Burks v. State, 792 S.W.2d 835, 840 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). We review the entire record to determine whether the finding of competence is so against the great weight and preponderance of the evidence that it is manifestly unjust. Meraz v. State, 785 S.W.2d 146, 155 (Tex.Crim.App.1990).

At the competency hearing, appellant's sisters and brother testified that appellant "had changed" since the incident. They received unintelligible letters from him when he was in jail. He became withdrawn and confused. His speech changed. He rarely spoke at all, but when he did, he never used the pronouns "I" or "me." He referred to himself as "you" or "he." Appellant's sister testified that she repeatedly entreated him to cooperate with his attorney but had little success in influencing him. Moreover, appellant's attorney testified that he thought that appellant was incompetent because he told of seeing "visions" and he became increasingly uncooperative and withdrawn. Both counsel and appellant's relatives stated that appellant's uncommunicativeness compromised his defense. They were convinced that appellant could not understand the nature and import of the proceedings against him. However, appellant's attorney admitted that appellant had been able to give him a fairly detailed account of the events leading to the instant charge. He stated that he originally thought appellant was faking insanity.

Appellant's psychiatrist observed that, when he examined appellant, appellant was cooperative, had sufficient intellect, and understood the purpose of his visit. He testified that appellant knew he was being charged with murder, and he was able to relate the events that transpired prior to being charged. The psychiatrist admitted he initially thought appellant was faking. However, he later concluded that appellant was either psychotic or had a combination of mental illnesses. A State's psychiatrist testified that appellant was competent, describing him as cooperative, alert, affable, and very much an advocate in his own defense. Appellant even questioned the State's psychiatrist's credentials.

Appellant testified himself that he was competent. He declared that he understood the purpose of the competency hearing and that he was competent. The evidence is sufficient to support the finding that appellant was competent. Point eleven is overruled.

■■■ By point twelve, appellant maintains that the prosecutor's mention of the charged offense in his closing argument at the competency hearing was reversible error. In his closing, the prosecutor urged the jury to "stick to their guns" if they thought appellant was competent, that he would "try this case again" if he had to, because he did not want appellant to "get away with murder." Appellant's counsel objected to the prosecutor's injection of his personal opinion and predictions. Appellant waived his complaint because the trial objection does not comport with that raised on appeal. *Thomas*, 723 S.W.2d at 700; *Baldonado*, 745 S.W.2d at 496; TEX. R.APP.P. 52(a). Any error presented is therefore waived.

■■■ By point four, appellant claims the trial court erred in failing to submit a jury question on the issue of self-defense. In the written confession appellant made to police, he stated, in part:

The reason I killed Ray was because I was confused. It was either him or me.

I know for a fact that Ray was "f— my wife." I just know I had to kill him.

Appellant testified at trial, somewhat unclearly, that the victim had hit him in the head with a gun. Appellant asserts that the statement above and appellant's trial testimony raised the issue of self-defense. We disagree. If the evidence raises the issue of self-defense, the accused is entitled to have it submitted to the jury. *Dyson v. State*, 672 S.W.2d 460, 463 (Tex.Crim.App. 1984). The defendant's testimony alone may be sufficient to raise a defensive theory. The issue is not the truth of the defendant's testimony, but whether, if the testimony is believed, a case for self-defense is made out. *Dyson*, 672 S.W.2d at 463.

Section 9.32 of the Texas Penal Code provides that the use of deadly force in self-defense is justified only in three instances: (1) when the defendant would have been justified in using force under § 9.31;[2] (2) a reasonable person in the defendant's situation would not have retreated; and (3) the use of deadly force was reasonably believed to be immediately necessary to protect the defendant against another's use or attempted use of unlawful deadly force. TEX.PENAL CODE ANN. §§ 9.31–9.32 (Vernon 1974). Since appellant used deadly force, some evidence must exist which satisfies sections 9.31 and 9.32. *Dyson*, 672 S.W.2d at 463. Appellant testified that Gurley hit him in the head with the butt of a gun, "around the time [they] stopped at a '76 station." Appellant's confession stated that the shooting occurred later, on the open highway, after they had stopped at the '76 station. A motorist witnessed the shooting on the highway. There is no evidence that appellant feared for his life. He stated that when he was hit, he felt dazed, like he was "in the twilight zone." Appellant was driving, but he did not state that the blow incapacitated him. There was no evidence that the attack, if any, was renewed. No evidence in the record shows that appellant reasonably believed that the use of deadly force was

2. Section 9.31(a) states: a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

*immediately necessary* to protect himself against deadly force. The statement in appellant's confession is inadequate as a matter of law to raise such an issue. We find no error in the court's refusal to charge the jury on self-defense. Point four is overruled.

By points fourteen through eighteen, twenty, and twenty-one, appellant complains that the trial court commented on the weight of the evidence and that the prosecutor engaged in improper jury argument. None of the arguments appellant raises were properly preserved for our review, and we do not address them. TEX. R.APP.P. 52(a). The only complaint properly preserved in these points is appellant's claim that the prosecutor's laughter denied appellant a fair trial. Appellant's counsel objected to "the snickering of the prosecution." The trial court gave an instruction to disregard, but denied appellant's motion for mistrial. The statements which evoked laughter from the prosecutor read as follows:

> [o]ur constitution, our laws, are written with the blood of our ancestors who died to give us and everybody these freedoms. Honor them.

Generally, error in final argument is cured by the court's prompt instruction to disregard. *See Kinnamon v. State,* 791 S.W.2d 84, 89 (Tex.Crim.App.1990); *Borrego v. State,* 800 S.W.2d 373, 377 (Tex. App.—Corpus Christi 1990, pet ref'd). Defense counsel's comments were general and not directly related to appellant, his defense, or the charged offense. The prosecutor's "snickering" at these comments was not so inflammatory that it was not cured by the trial court's instruction to disregard. The foregoing points are all overruled.

We affirm the trial court's judgment.