

# NUMBER 13-17-00157-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

STEVEN ALPACINO CERVANTES
A/K/A STEVEN ALPACHINO SANCHEZ
CERVANTES,                                                              **Appellant,**

**v.**

THE STATE OF TEXAS,                                                     **Appellee.**

### On appeal from the 139th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Longoria and Hinojosa**
**Memorandum Opinion by Justice Hinojosa**

Appellant Steven Alpacino Cervantes a/k/a Steven Alpachino Sanchez Cervantes

appeals his convictions for three counts of failing to stop and render aid, each a third-

degree felony. *See* TEX. TRANSP. CODE ANN. § 550.021(c)(1)(B) (West, Westlaw through

2017 1st C.S.). A jury found appellant guilty, and the trial court sentenced appellant to concurrent five-year prison terms on each count. By nine issues, which we treat as six, appellant argues that: (1) prosecutorial misconduct rendered his trial "constitutionally unfair," and the trial court erred in denying his motions for mistrial on that basis; (2) the trial court abused its discretion in overruling appellant's objection to the testimony of an undisclosed witness; (3) the trial court abused its discretion in overruling appellant's objections to photographic evidence; (4) appellant's Fifth Amendment protection against self-incrimination was violated when he was compelled to display his tattoo at trial; (5) the trial court erred in denying appellant's motion for new trial; and (6) cumulative error warrants reversal of appellant's convictions. We affirm.

## I. BACKGROUND

The charges against appellant stem from a motor vehicle collision between a white Lexus and a vehicle operated by Miguel Matamoras and occupied by his girlfriend, Maria Penaloza, and Penaloza's two children. Penaloza testified that they were driving to a nail salon in McAllen, Texas when a white Lexus collided with the side of their vehicle at a high rate of speed. Penaloza described the driver of the other vehicle as a husky male with tattoos and a beard. She stated that the driver smelled of alcohol. The driver talked briefly to Matamoras before fleeing the scene on foot. Paramedics arrived and transported Penaloza and her children to the emergency room. Penaloza's left arm was broken in the accident, and the injury resulted in permanent disfigurement.

Matamoras testified that the collision left him feeling dizzy. He exited his vehicle and attempted to orient himself. The driver of the Lexus then approached Matamoras

2

and asked if everyone was okay. Matamoras recalled that the driver smelled of alcohol and that he had a mustache and a wavy tattoo on his chest. Moments later, a bystander told Matamoras that the driver was running away. Matamoras ran in the indicated direction in pursuit, but he did not locate the driver.

Serena Cervantes, appellant's daughter, testified that she was driving home with her mother when she saw the aftermath of a vehicular accident. She recalled thinking that one of the vehicles involved in the accident looked like appellant's vehicle.

McAllen police officers Jose Razo, Antonio Garcia, Michael Gutierrez, Mike Garcia, and Irineo Ramos each testified concerning their role in investigating the accident. The officers searched the area but were unable to locate the driver of the Lexus. Officer Razo concluded that the driver disregarded a stop sign, thereby causing the collision. Officers discovered marijuana seeds, synthetic marijuana, a cell phone, and a credit card issued to Dyana Lucas in the abandoned vehicle. The vehicle was registered to Lucas, who officers learned was appellant's girlfriend. Serena spoke to an officer at the scene and told him that the Lexus looked like her father's vehicle. The officers dusted for fingerprints, but the latent prints were unsuitable for comparison. Officers removed the airbag and submitted it for DNA testing; however, no discernible DNA profile could be retrieved.

After obtaining a search warrant, Officer Ramos reviewed the contents of the recovered cell phone, which included photographs of appellant and text messages indicating that the phone's owner referred to himself as "Chino." Officer Ramos also

visited a store owned by Lucas, which sold synthetic marijuana similar to what was found in the Lexus.

The trial court admitted State's Exhibit 1, a photograph of appellant in which a tattoo on his chest is partially visible. Penaloza testified that the driver of the Lexus had the same tattoo. Appellant later displayed his tattoo in court, and Penaloza again recognized it. Both Penaloza and Matamoras positively identified appellant in court as the driver of the Lexus.

John Vasquez, a Hidalgo County Sheriff's deputy, testified that he responded to a reported burglary at appellant's residence. Appellant told Deputy Vasquez that someone stole several items from the home, including his vehicle, which appellant described as a white Lexus. Deputy Vasquez inspected the house, but he did not find any signs of forced entry.

The jury returned guilty verdicts on three counts of failing to stop and render aid. Appellant filed a motion for new trial, which the trial court denied following a hearing. This appeal followed.

## II.    PROSECUTORIAL MISCONDUCT

By his first issue, appellant argues that "[t]he prosecution engaged in prosecutorial misconduct rendering [a]ppellant's trial constitutionally unfair." Appellant complains of the following conduct by the State:   (1) placing an unadmitted exhibit on the counsel table within the view of the jury; (2) showing a witness an exhibit, which the trial court ruled was inadmissible; (3) commenting on matters outside of the record in response to an objection; and (4) laughing at a remark made by a witness. Appellant also argues that

4

the trial court erred in overruling his motions for mistrial concerning the State's reference to the aforementioned exhibit, its comments on matters outside the record, and its closing argument which appellant alleges "shifted the burden of proof."

## A.     Standard of Review and Applicable Law

We review the denial of a motion for mistrial under an abuse-of-discretion standard.  *Archie v. State*, 221 S.W.3d 695, 699–700 (Tex. Crim. App. 2007).   Under this standard, we uphold the trial court's ruling if it is within the zone of reasonable disagreement.   *Id*.   "A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile."  *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000) (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)).   It is appropriate only for "a narrow class of highly prejudicial and incurable errors."   *Id*.; *see Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).   When the prejudice is curable, an instruction by the court to disregard eliminates the need for a mistrial.   *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004).   The law generally presumes that a jury will follow the trial court's instruction.   *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009).

We resolve allegations of prosecutorial misconduct on a case-by-case basis and determine whether the prosecutor's conduct requires reversal based on the probable effect on the minds of the jurors.   *Stahl v. State*, 749 S.W.2d 826, 830 (Tex. Crim. App. 1988); *Bautista v. State*, 363 S.W.3d 259, 263 (Tex. App.—San Antonio 2012, no pet.). Prosecutorial misconduct exists where (1) the prosecutor deliberately violated an express court order; (2) the misconduct was so blatant as to border on being insubordinate; or (3)

5

a prosecutor's action was so clearly calculated to inflame the minds of the jury that an instruction to disregard cannot cure the harm. *See Stahl*, 749 S.W.2d at 831; *Perkins v. State*, 902 S.W.2d 88, 96 (Tex. App.—El Paso 1995, pet. ref'd).

Prosecutorial misconduct is an independent basis for an objection that must be specifically urged to preserve error. *Clark v. State*, 365 S.W.3d 333, 338 (Tex. Crim. App. 2012); *Hajjar v. State,* 176 S.W.3d 554, 566 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). The proper method is to (1) object on specific grounds, (2) request an instruction that the jury disregard the matter improperly placed before the jury, and (3) move for a mistrial. *Penry v. State,* 903 S.W.2d 715, 764 (Tex. Crim. App. 1995); *Cook v. State,* 858 S.W.2d 467, 473 (Tex. Crim. App. 1993).

## B.    Analysis

### 1.    Exhibits in View of Jury

The trial court admitted State's Exhibit 1, a photograph of appellant, over appellant's objection that it was a mugshot that constituted evidence of an extraneous offense. The trial court granted appellant's identical objection to State's Exhibit 2. During the State's examination of Matamoros, the following exchange took place:

| | |
|---|---|
| Defense Counsel: | Judge, the only objection I have before he proceeds, the State has all the pictures where the jury can see them. They haven't been admitted. I ask that those pictures— |
| Trial Court: | All right. Cover up the photos. |
| Defense Counsel: | They were denied, Your Honor. |
| Prosecutor: | The photos are already— |

6

Defense Counsel:    I understand, Judge.

Prosecutor:         —where the jury can't see them.

Defense Counsel:    The jury is right there, Judge?

Trial Court:        All right.   Duly noted.   Cover them up and move on.

    . . . .

Prosecutor:         They are covered up, Judge.

At another point in the proceedings, the following exchange occurred:

Defense Counsel:    Judge, I will object again to the State having pictures
                    where the jury can see them.   Judge, I mean—

Trial Court:        All right. I already told [you] all once in the morning.
                    You know better than that.

Defense Counsel:    I will ask for a mistrial again, Judge.

Trial Court:        That will be denied.

Appellant did not specifically object on the basis of prosecutorial misconduct, nor did he request an instruction to disregard.   Therefore, appellant has not preserved his allegation of prosecutorial misconduct in this instance for appellate review.   *See Penry,* 903 S.W.2d at 764.   Even if appellant had properly preserved his complaint, the record does not support his contention that the prosecution acted deliberately in violation of the court's directive or that any juror saw the exhibit.   *See Havard v. State*, 800 S.W.2d 195, 203–04 (Tex. Crim. App. 1989) (finding no merit in the appellant's allegation of prosecutorial misconduct based in part on the fact that the jury did not see a photograph that the trial court had ordered should not be shown to the jury); *Delgadillo v. State*, 508 S.W.2d 383, 384 (Tex. Crim. App. 1974) (concluding there was no prosecutorial

7

misconduct in relation to an unadmitted exhibit being visible to the jury where the record reflected no bad faith on the part of the prosecutor); *see also Daniels v. State*, No. 01-01-01030-CR, 2002 WL 31521221, at *2–3 (Tex. App.—Houston [1st Dist.] Nov. 14, 2002, pet. ref'd) (op., not designated for publication) (concluding that the prosecutor's placement on counsel table of a file marked with defendant's prior convictions did not constitute misconduct, where there was no evidence that jurors looked at the file or considered what, if anything, they saw). We conclude that the record does not demonstrate prosecutorial misconduct. *See Stahl*, 749 S.W.2d at 831. Therefore, the trial court did not abuse its discretion in denying appellant's motion for mistrial. *See Archie*, 221 S.W.3d at 699–700.

## 2. Exhibit Displayed to Witness

Appellant also argues that the following actions of the State constituted prosecutorial misconduct:

| | |
|---|---|
| Prosecutor: | Does the tattoo look like this? |
| Matamoras: | Yeah. |
| Prosecutor: | Okay. Does it fairly and accurately reflect the same tattoo you saw on April 10th, 2014? |
| Defense Counsel: | Judge, the— |
| Matamoras: | Yeah, it had this— |
| Defense Counsel: | —same objection we had—we had this— |
| Matamoras: | Yeah. |
| Defense Counsel: | At this time I move for a mistrial, Judge, as to— |

8

| | |
|---|---|
| Matamoras: | Yeah, it was like— |
| Trial Court: | Nothing has been introduced. |
| Matamoras: | —it was shaped like a name. |
| Trial Court: | Your objection is overruled. What do you have, Counsel? |
| Prosecutor: | Judge, it's State's Exhibit No.— |
| Trial Court: | The Court has already ruled on that. |
| Prosecutor: | It's not for—it's for identifying purposes, Judge. |
| . . . . | |
| Trial Court: | All right. You showed it to him, now what? You're not going to offer it into evidence because it's denied and put that photo down. |

Appellant contends that the State was displaying State's Exhibit 2 to the witness, which the trial court previously ruled was inadmissible. The State does not take issue with this contention, and it appears to be supported by the context of the witness examination. Nevertheless, appellant failed to specifically urge an objection based on prosecutorial misconduct. Therefore, appellant did not preserve his complaint. *See Penry,* 903 S.W.2d at 764. Further, the record does not establish prosecutorial misconduct because the State complied with the trial court's order to discontinue referring to the exhibit. *See Havard*, 800 S.W.2d at 204 (concluding that there was no prosecutorial misconduct warranting a mistrial by the prosecutor's questioning of a witness regarding photographs that were ruled inadmissible, where the prosecutor ceased doing so upon the trial court's order). We conclude the trial court did not abuse

9

its discretion in denying appellant's motion for mistrial. *See Archie*, 221 S.W.3d at 699–700.

### 3. Comments on Matters Outside the Record

Next, appellant complains of the following colloquy during the State's examination of Officer Razzo:

| Prosecutor: | As a crash specialist, do you believe that the marijuana was important as evidence? |
|---|---|
| Defense Counsel: | Judge, again, I'm going to object to relevance at this point. I don't know where [the State] is going with it. |
| Prosecutor: | Your Honor, there is testimony—if I may, there is testimony and its already been made a point that there was—there were drugs in the vehicle that were recovered during the inventory, synthetic and regular marijuana, and there is testimony that this driver was impaired in some way either by drinking or was high and had involvement in some sort of drugs and that being the reason for him fleeing the accident. |
| Defense Counsel: | Judge, but as we go into the indictment it's not one of the— |
| Trial Court: | Where are you going with this questioning? . . . There is no testimony . . . of any marijuana use or anything. It was just found in there. |
| Prosecutor: | Your Honor, in the—if I may, in the vehicle inventory when it was done there was synthetic and regular marijuana found and that's relevant because of the place of employment of this Defendant and what they sold at that place. |
| Defense Counsel: | Judge, again—Your Honor, at this time I move for a mistrial. There is no testimony before this Court as to— |
| Trial Court: | Your mistrial is denied. |

10

| Defense Counsel: | Judge, she is bringing facts into the witness—into the jury right now without— |
|---|---|
| Trial Court: | I already ruled, Counsel.  And his objection is good.  Move on to something else. . . .  The jury will disregard that last statement made by the prosecuting counsel. |

Appellant maintains that the State improperly commented on matters outside of the record.  "Improper references to facts that are neither in evidence nor inferable from the evidence are generally designed to arouse the passion and prejudice of the jury and, as such, are inappropriate."  *Freeman v. State*, 340 S.W.3d 717, 728 (Tex. Crim. App. 2011).  However, we note that the State's comments are generally supported by the evidence adduced at trial.  There were multiple witnesses who testified concerning the vehicle inventory.  It would be reasonable to infer from this evidence that the presence of illicit substances motivated appellant to flee the accident.  There was also evidence that appellant's girlfriend owned a store which sold synthetic marijuana.

Furthermore, the record fails to establish that the prosecution's comments were incurably prejudicial.  The trial court sustained appellant's objection and sua sponte instructed the jury to disregard the comments.  "An instruction to disregard is presumptively inadequate only in the most blatant cases; only offensive or flagrantly improper conduct warrants reversal when there has been an instruction to disregard." *Pierce v. State*, 234 S.W.3d 265, 268 (Tex. App.—Waco 2007, pet. ref'd) (citing *Wilkerson v. State*, 881 S.W.2d 321, 327 (Tex. Crim. App. 1994)).  We find nothing in the record to suggest that the jury disregarded the trial court's instruction, so we must presume the instruction was followed.  *See Gamboa*, 296 S.W.3d at 580 (relying on the presumption

11

that the jury followed the judge's instructions). We further conclude that the prosecution's comments were not of such a nature that the trial court's curative instruction was inadequate. *See Pierce*, 234 S.W.3d at 268. Therefore, the trial court did not abuse its discretion in denying appellant's motion for mistrial. *See Archie*, 221 S.W.3d at 699–700.

**4.      Laughing in Front of Jury**

Appellant argues that the State engaged in prosecutorial misconduct by laughing during appellant's questioning of Officer Ramos:

| | |
|---|---|
| Defense Counsel: | Well, no text message at 9:11, no text message at ten o'clock— |
| Officer Ramos: | The phone was left behind.   How was he going to text? |
| Defense Counsel: | I understand but there is [sic] no calls—there is nothing there at that point, correct? |
| Officer Ramos: | No, sir. |
| Defense Counsel: | Now, they may think it's funny, but I don't think it's funny. |
| Prosecutor: | Objection, sidebar. |
| Defense Counsel: | Judge, they're laughing in front of the jury. |
| Trial Court: | Both of you cease and desist.   Let's go. |

Appellant neither requested an instruction to disregard, nor did he request a mistrial. Therefore, he has not preserved his complaint. *See Penry,* 903 S.W.2d at 764. Even if one had been requested, we do not believe a mistrial on this record would have been warranted. While laughter or snickering by counsel is inappropriate under most

12

circumstances, the isolated instance cited here does not arise to reversible prosecutorial misconduct. *See McFarland v. State*, 834 S.W.2d 481, 488 (Tex. App.—Corpus Christi 1992, no pet.) (prosecutor's "snickering" at comments made by defense counsel during final jury argument was not so inflammatory that it could not have been cured by trial court's instruction to disregard).

### 5. Shifting the Burden of Proof

Next, appellant argues that a mistrial was warranted when the State "shifted the burden of proof during closing arguments." Appellant contends that the State's comment concerning appellant's power to secure evidence via subpoena was improper.

The Fifth Amendment of the United States Constitution protects the right of an accused from being compelled to be a witness against himself. U.S. CONST. amend. V. In addition, the burden of proof in a criminal case is placed on the State to prove each element of the charged offense beyond a reasonable doubt, and attempts to shift that burden to the defendant may constitute a violation of the due process clause of the Fourteenth Amendment. *See* TEX. PENAL CODE ANN. § 2.01 (West, Westlaw through 2017 1st C.S.); *Lowry v. State*, 692 S.W.2d 86, 87 (Tex. Crim. App. 1985) (en banc) (citing *Mullaney v. Wilbur*, 421 U.S. 684, 702 (1975)). The State may comment on the defendant's failure to produce witnesses or evidence, but only if it does so in a manner that does not amount to a comment on the defendant's decision not to testify. *See, e.g., Pope v. State*, 207 S.W.3d 352, 365 (Tex. Crim. App. 2006); *Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000); *Hinojosa v. State*, 433 S.W.3d 742, 762 (Tex. App.—San Antonio 2014, pet. ref'd). Jury argument pointing out that the defendant has failed

13

to present evidence in his favor does not shift the burden of proof but instead summarizes the state of the evidence and is a reasonable deduction from the evidence. *See Jackson*, 17 S.W.3d at 674.

During closing argument, appellant's counsel commented that "there was a video around there that didn't show anything that we wished we would have gotten." The State responded by arguing that appellant had the power to subpoena evidence such as the video. The State's comment was clearly in response to appellant's closing argument and not a reference to appellant's failure to testify. *See id*. We conclude that the trial court did not abuse its discretion in denying appellant's motion for mistrial. *See Archie*, 221 S.W.3d at 699–700.

### 6.    Continuing Misconduct

Lastly, appellant maintains that he is entitled to a new trial due to on-going prosecutorial misconduct throughout the proceedings. A new trial may be warranted in the absence of a specific objection, where serious and continuing prosecutorial misconduct undermines the reliability of the factfinding process and deprives the defendant of fundamental fairness and due process of law. *Bautista*, 363 S.W.3d at 263; *Jimenez v. State*, 298 S.W.3d 203, 214 (Tex. App.—San Antonio 2009, pet. ref'd). For the reasons discussed above, we conclude that the record does not demonstrate serious and continuing prosecutorial misconduct. We overrule appellant's first issue.

### III.    DISCLOSURE OF WITNESSES

By his second issue, appellant argues that the trial court erred in permitting the testimony of Deputy Vasquez. Appellant objected to his testimony because the State

did not identify Deputy Vasquez on its witness list.

## A.    Standard of Review and Applicable Law

Generally, notice of the State's witnesses must be given upon request by the defense.   *Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993); *Hamann v. State*, 428 S.W.3d 221, 227 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd); *Depena v. State*, 148 S.W.3d 461, 465 (Tex. App.—Corpus Christi 2004, no pet.).   If the trial court allows a witness who was not on the State's list to testify, we review that decision for an abuse of discretion.   *See Martinez*, 857 S.W.2d at 39; *Hamann*, 428 S.W.3d at 227.   In our review, we consider two factors:   (1) whether the State's actions in calling a previously undisclosed witness constituted bad faith, and (2) whether the defendant could have reasonably anticipated that the witness would testify.   *Wood v. State*, 18 S.W.3d 642, 649 (Tex. Crim. App. 2000) (citing *Nobles v. State*, 843 S.W.2d 503, 514–15 (Tex. Crim. App. 1992)); *Hamann*, 428 S.W.3d at 228.

## B.    Analysis

Appellant filed a motion for discovery, requesting the names of any expert witness the State intended to call.   However, appellant did not request any information concerning lay witnesses.   Furthermore, there is no discovery order in the record requiring the State to provide such information.   Therefore, the State was under no obligation to disclose that it intended to call Deputy Vasquez.   *See Martinez*, 867 S.W.2d at 39; *Hamann*, 428 S.W.3d at 227; *Depena*, 148 S.W.3d at 465.   In addition, the record demonstrates that appellant could have reasonably anticipated that Deputy Vasquez would testify.   Appellant filed a notice of its intention to rely on the State's subpoenas for

15

witnesses. Due to numerous trial settings, the State filed over twenty applications for subpoenas identifying Deputy Vasquez. We conclude that on this record the trial court did not abuse its discretion in overruling appellant's objection to Deputy Vasquez's testimony. *See Martinez*, 857 S.W.2d at 39.

We also observe that appellant did not move for a continuance in order to prepare for Deputy Vasquez's testimony. Therefore, even if there was error in the admission of the testimony, we are precluded from holding that the error was harmful. *See Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. [Panel Op.] 1982) ("The failure to request a postponement or seek a continuance waives any error urged in an appeal on the basis of surprise."); *see also McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005) (considering defendant's failure to request continuance as a factor weighing against finding of harm when State failed to give timely rule 404(b) notice); *Martin v. State*, 176 S.W.3d 887, 900 (Tex. App.—Fort Worth 2005, no pet.) (explaining that the defendant waived any complaint that he was surprised by the State's untimely notice by failing to request a continuance). We overrule appellant's second issue.

### IV.   EVIDENTIARY RULING

By his third issue, appellant argues that the trial court erred by admitting State's Exhibit 1 because the State failed to notify appellant of its "intent to use other-crimes evidence" and because the exhibit was overly prejudicial.[1] Particularly, appellant complains that the exhibit was a mugshot from a prior offense.

---

[1] Appellant argues that the trial court erred by admitting State's Exhibits 1 and 2. However, the trial court sustained appellant's objection to State's Exhibit 2. Therefore, we will only address the trial court's ruling concerning State's Exhibit 1.

16

**A.      Standard of Review and Applicable Law**

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion.  *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011).   We will uphold the trial court's ruling unless it falls outside the zone of reasonable disagreement.  *Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016).   If the trial court's evidentiary ruling is reasonably supported by the record and correct on any theory of applicable law, we will uphold the decision.  *See State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014).

The typical concern in admitting a defendant's mugshot is whether it provides prejudicial evidence of an extraneous offense.  *Hollis v. State*, 219 S.W.3d 446, 466 (Tex. App.—Austin 2007, no pet.); *see Alexander v. State*, 88 S.W.3d 772, 780–81 (Tex. App.—Corpus Christi 2002, pet. ref'd) (determining that a mugshot from a prior offense was inadmissible because it "had a substantial and injurious effect on the jury's verdict" by painting appellant "as someone who had been arrested at least twice before").   When the photograph itself establishes that it was taken by law enforcement in the context of an unrelated arrest, it is improper evidence of an extraneous offense.  *Araiza v. State*, 929 S.W.2d 552, 555 (Tex. App.—San Antonio 1996, pet. ref'd); *see Richardson v. State*, 536 S.W.2d 221, 223 (Tex. Crim. App. 1976) (concluding that the introduction of a mugshot that showed front and side view of defendant and depicting a sign that read "SAN ANTONIO PD P7302316 10–22 73 7–15 AM" was reversible error).   However, when there are no indications that the picture was taken by law enforcement, it does not

constitute inadmissible extraneous offense evidence. *Araiza*, 929 S.W.2d at 555 (citing *Huerta v. State*, 390 S.W.2d 770, 772 (Tex. Crim. App. 1965)).

## B. Analysis

Our review of the record reveals no circumstances that would indicate that the photograph was a mugshot or that it was taken following an arrest for an extraneous offense. The photograph contains no markings. Appellant is directly facing the camera, and his chest, shoulders, and head are visible. He is wearing a collared shirt, and the background is nondescript. The testimony concerning the photograph was limited to a witness stating that he recognized the partial tattoo visible in the picture. Because the exhibit does not constitute evidence of a prior offense, we conclude that the trial court did not abuse its discretion in overruling appellant's objection on that basis.[2] *See Hollis*, 219 S.W.3d at 466 (concluding that trial court did not err in overruling objection to mugshot where there was nothing about the picture indicating an extraneous offense). We overrule appellant's third issue.

## V. PRIVILEGE AGAINST SELF-INCRIMINATION

By his fourth issue, appellant argues that the trial court's ruling requiring him to display his tattoo in court violated his Fifth Amendment right against self-incrimination.

Requiring a defendant to display an identifying characteristic to the jury does not violate the Fifth Amendment. *See Taylor v. State*, 474 S.W.2d 207, 210 (Tex. Crim. App. 1971) ("[I]t has been held proper during a trial to require the defendant to stand, put on a

---

[2] Aside from appellant's characterization of the exhibit as a mugshot from a prior offense, appellant presents no additional argument as to why the exhibit was "overly prejudicial."

hat, remove glasses, or make a footprint for the purposes of identification."); *Whitlock v. State*, 338 S.W.2d 721, 723 (Tex. Crim. App. 1960) (concluding trial court did not err in failing to declare a mistrial where the defendant complied with request to display his left hand which was missing a portion of the thumb). Accordingly, Texas courts have repeatedly held that the display of a defendant's tattoos to the jury is not a violation of the right against self-incrimination. *Garza v. State*, 213 S.W.3d 338, 347 (Tex. Crim. App. 2007); *Canales v. State*, 98 S.W.3d 690, 697 (Tex. Crim. App. 2003); *Sauceda v. State*, 309 S.W.3d 767, 769 (Tex. App.—Amarillo 2010, pet. ref'd); *Garcia v. State*, 239 S.W.3d 862, 868 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *DeLeon v. State*, 758 S.W.2d 621, 625 (Tex. App.—Houston [14th Dist.] 1988, no pet.); *see also McDonald v. State*, No. 13-98-072-CR, 1999 WL 33757925, at *2 (Tex. App.—Corpus Christi Feb. 25, 1999, no pet.) (op., not designated for publication). We overrule appellant's fourth issue.

## VI. MOTION FOR NEW TRIAL

By his fifth issue, appellant argues that the trial court erred in denying his motion for new trial, which asserted claims of prosecutorial misconduct. Appellant's motion for new trial urged the same grounds as his motions for mistrial and trial objections. Appellant does not present any new issues that we have not already addressed in this memorandum opinion. For the reasons discussed above, we conclude that appellant was not entitled to a new trial based on prosecutorial misconduct. We overrule appellant's fifth issue.

## VII. CUMULATIVE ERROR

By his sixth issue, appellant argues that his conviction "should be reversed through the cumulative error doctrine."

Multiple errors may be found to be harmful in their cumulative effect, even if each error considered separately, would be harmless. *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). The mere existence of multiple errors, however, does not warrant reversal unless they operated in concert to undermine the fundamental fairness of the proceedings. *Estrada v. State*, 313 S.W.3d 274, 311 (Tex. Crim. App. 2010). Moreover, if an individual's claims of error lack merit, then there is no possibility of cumulative error. *Gamboa*, 296 S.W.3d at 585. Appellant has not demonstrated any trial court error from which we could consider cumulative harm. We overrule appellant's sixth issue.

## VIII. CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
20th day of November, 2018.